An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-682

Filed 17 June 2026

Orange County, Nos. 23CR296604-670, 23CR314075-670, 23CR314542-670, 23CR317688-670, 23CR323429-670

STATE OF NORTH CAROLINA

v.

FRANKIE EUGENE SHIPMAN, Defendant.

Appeal by Defendant from judgment entered 30 January 2025 by Judge R. Allen Baddour, Jr. in Orange County Superior Court. Heard in the Court of Appeals 26 February 2026.

>*Attorney General Jeff Jackson, by Assistant Attorney General Maria B. Lattimore, for the State.*
>
>*Law Office of Jason R. Page, PLLC, by Jason R. Page, for Defendant–Appellant.*

MURRY, Judge.

Frankie E. Shipman (Defendant) appeals from judgments entered upon jury verdicts finding him guilty of one count of felony stalking and twelve counts of misdemeanor violation of a domestic violence protective order (DVPO). On appeal, Defendant argues that the trial court erred by denying his motion to dismiss all charges for insufficient evidence. For the reasons below, we hold the trial court did

not err by denying Defendant's motion.

## I. Background

Chazzidy Gomez gave birth to her and Defendant's daughter in October 2016. Defendant never lived with Ms. Gomez but would visit their daughter "once or twice a week" for the first six years of the child's life. In June 2022, after having gone months without seeing their daughter, Defendant left gifts for her on Ms. Gomez's doorstep despite Ms. Gomez's request that they meet up at a different time for him to do so. Ms. Gomez observed afterwards that all four tires of her boyfriend's car, which was parked close to her apartment, had been slashed with "[b]ig stab wounds." Believing that Defendant had slashed the tires, Ms. Gomez applied for a temporary *ex parte* DVPO, which the trial court granted on 6 June 2022. The trial court found that Defendant had "attempted to cause . . . injury" to Ms. Gomez and had placed her "in fear" of continued harassment. Consequently, the trial court ordered Defendant to "stay at least 1,000 feet away from [Ms. Gomez]" and their child and "not to contact [Ms. Gomez] directly or indirectly."

Although the trial court initially set a domestic violence hearing for June 2022, the trial court continued the hearing three times between June and September 2022 due to finding that Defendant had not been served with notice of the hearing. The Wake County Sherrif's Office finally served Defendant with the summons and a copy of the *ex parte* DVPO on 30 August 2022. Following a 20 October 2022 hearing, the trial court issued a one-year DVPO prohibiting Defendant from contacting Ms.

Gomez, but Defendant continued to contact her through social media, phone calls, and text messages. Although Ms. Gomez initially allowed Defendant to contact their daughter so they could "have a relationship," she eventually ceased communication because Defendant was "really unstable" and "unpredictable."

In April 2023, Defendant messaged Ms. Gomez at 3:00 AM that he would be coming by her house. In response, she "blocked [her] door with [her] sofa, scared that he would come in," and "didn't sleep that night." She also sent a screenshot of Defendant's message to Wake County Deputy Sheriff Cameron Miller. Defendant continued to visit Ms. Gomez's apartment unannounced during May of 2023, leaving items at her doorstep. Upon finding items from Defendant outside her door and one of her car tires slashed, Ms. Gomez reported these issues to the police, who investigated the incident. On 23 May 2023, Defendant drove to Ms. Gomez's apartment complex and parked behind her car while she was in it, preventing her from leaving. Fearful of Defendant's approach, she called the police as he attempted to speak with her. A few weeks later, Defendant threatened Ms. Gomez's boyfriend through social media. In June 2023, Ms. Gomez moved to renew the DVPO, which the trial court granted for a two-year term on 13 July 2023, finding that "Defendant continues to harass and destroy [Ms. Gomez's] property" and she "still needs protection."

On 30 October 2023, a grand jury indicted Defendant for one count of felony stalking and fifteen counts of violating a DVPO. The matter came on for trial on 27

January 2025. At trial, Ms. Gomez testified to Defendant's numerous instances of contact with her in violation of the DVPO and to being "in fear" of Defendant due to his repeated threats and harassment, slashing the tires of her boyfriend's car, and "coming to [her] house unannounced." She claimed that Defendant's conduct "scared" her because "he'[d] threatened [her] with guns" prior to her obtaining the DVPO. Deputy Miller testified to his compilation of Ms. Gomez's domestic violence report and to personally serving Defendant with copies of the *ex parte* DVPO and notice of hearing. The assistant clerk of court testified that the clerk's office mailed Defendant a copy of the one-year permanent DVPO to the address on file for him in accordance with standard procedure.

Defendant testified in his own defense that he never received a copy of the DVPO and did not know of its existence. Despite this assertion, he admitted to sending Facebook messages to a friend regarding "a letter [sent] to [his] mom's house from the police . . . talking about some domestic." He also acknowledged that the trial court's address on file for him "was [his] mom's old address" and affirmed that he had lived with his mother in the past. Defendant moved to dismiss all charges against him for insufficient evidence at the close of the State's evidence and again at the close of all evidence. The trial court denied both motions. The jury returned verdicts finding Defendant guilty of one count of felony stalking and twelve counts of misdemeanor DVPO violation. The trial court sentenced Defendant to 16–23 months but suspended the sentence for 24 months of supervised probation. Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's denial of his motion to dismiss because it is a final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of a trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty).

## III.    Analysis

Defendant argues that the trial court erred by denying his motion to dismiss because the State failed to provide substantial evidence at trial that Defendant had notice of the DVPO and that a reasonable person in Ms. Gomez's circumstances would have feared for her safety or suffered emotional distress. This Court reviews a trial court's denial of a motion to dismiss *de novo* to determine "[w]hether the State presented substantial evidence of each essential element of the offense" charged. *State v. Tucker*, 380 N.C. 234, 236 (2022) (quotation omitted). In doing so, we consider whether "more than a scintilla of evidence" supports "each essential element of the offense charged, or of a lesser offense included therein," and the "defendant's being the perpetrator of such offense." *Id.* at 236–37 (quotations omitted). We "view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Barnes*, 334 N.C. 67, 75 (1993) (citation omitted). Viewing the evidence in the light most favorable to the State, we

hold that the trial court did not err by denying Defendant's motion to dismiss for the reasons discussed below.

## A. Notice

First, Defendant argues that the State failed to provide substantial evidence at trial that he had notice of the DVPO. To establish a DVPO violation, the State must show that the defendant "knowingly" "violated" "a valid domestic violence protective order." *State v. Williams*, 226 N.C. App. 393, 406 (2013). *Knowingly* "means that [the] defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged." *Id.* (quotation omitted). Our Rules of Civil Procedure allow service of an order on a *pro se* party "[b]y mailing a copy to the party at the party's last known address or, if no address is known, by filing it with the clerk of court." N.C. R. Civ. P. 5(b). "Adequacy of notice is a question of law" reviewed *de novo*. *Barnett v. King*, 134 N.C. App. 348, 350 (1999).

Although Defendant claims to lack knowledge of the DVPO due to improper service, the evidence at trial demonstrates otherwise. Deputy Miller, who had investigated Ms. Gomez's domestic violence report, testified that the Wake County Sheriff's Office served Defendant personally with a copy of the initial *ex parte* DVPO and a notice of the DVPO hearing on 30 August 2022. The trial court admitted both documents into evidence. The assistant clerk of court testified to mailing the resulting order in accordance with standard operating procedure. She further testified that the clerk's office mailed Defendant a copy of the one-year permanent DVPO "based on the

procedure." Defendant admitted to sending Facebook messages to a friend regarding "a letter [sent] to [his] mom's house from the police . . . talking about some domestic." Defendant stated that he "believe[d]" the address on file for him "was [his] mom's old address" and affirmed that he had lived with his mother in the past. Viewing the evidence in the light most favorable to the State, we hold that the State properly showed Defendant's knowledge of the DVPO. *See Barnes*, 334 N.C. at 75. Thus, the trial court did not err by denying Defendant's motion to dismiss on this ground.

## B. Reasonable Fear

Second, Defendant argues that the State failed to provide substantial evidence that a reasonable person in Ms. Gomez's circumstances would have feared for her safety or suffered emotional distress. Under North Carolina law, a defendant commits "stalking" when he "willfully on more than one occasion harasses another person without legal purpose" and "knows or should know that the harassment . . . would cause a reasonable person to . . . [f]ear for [her] . . . safety" or "[s]uffer substantial emotional distress by placing [her] . . . in fear of death, bodily injury, or continued harassment." N.C.G.S. § 14-277.3A(c). The statute defines *harassment* as "[k]nowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." *Id.* § 14-277.3A(b)(2). We have explained that incriminating communication "generally . . . involve[s] some type of habitual stalking with numerous instances of contact over a period of time." *State v. Wooten*, 206 N.C. App. 494, 499–500 (2010) (quotation omitted); *see Williams*, 226

N.C. App. at 397 (requiring "continuing course of conduct" to prove stalking).

Here, Ms. Gomez testified that Defendant made social-media comments that "felt like . . . a threat" and "scared" her because "he'[d] threatened [her] with guns" prior to her obtaining the DVPO. She voiced her concerns that Defendant's conduct "was escalating and . . . seemed irrational" and claimed she was "in fear" of him due to his slashing the tires of her boyfriend's car and "coming to [her] house unannounced." She also testified to calling 911 from her car "immediately" after Defendant approached her in front of her house because she "didn't know how angry he was at [her] and . . . it was scary." When asked why she filed a motion to renew the DVPO, Ms. Gomez answered that Defendant "was still doing the same thing[s]" that put her "in fear" of him and that she was afraid of "[h]im hurting [her]." Her motion to renew recounts how Defendant "continuously reached out to [her] through texts, phone calls[,] and different social media platforms" and an incident where he "blocked [her] car in . . . and started to try to talk to [her]."

In its order renewing the DVPO, the trial court found that "Defendant continues to harass and destroy [Ms. Gomez's] property" and that she "still needs protection." The trial court further found that Defendant had "sen[t Ms. Gomez] a video of guns to intimidate" her, sent "multiple harassing phone calls and social media messages," and "threw an object at [Ms. Gomez] and the minor child as they were walking away from Defendant" on one occasion. The evidence at trial shows Defendant's pattern of threats and harassment towards Ms. Gomez, with "numerous

instances" of unwanted contact that caused her emotional distress and which would have caused a reasonable person in her position to fear for her safety. *Wooten*, 206 N.C. App. at 500.

Defendant mischaracterizes his conduct as serving a legal purpose because he was "attempt[ing] to contact his daughter." But his threatening social-media comments and messages did not mention his daughter or relate to her in any way. Ms. Gomez testified that Defendant asked her out on a date, which she refused, and had gone "months" without seeing their daughter prior to her seeking the DVPO. She also testified that, even though she wanted her daughter to maintain a father–daughter relationship with Defendant, she eventually ceased communication with him "because it seemed like every time [they] would try, it would escalate from being just about [their daughter] to it being other things." Defendant's numerous instances of harassment served no legitimate purpose, and the State presented substantial evidence that a reasonable person in Ms. Gomez's circumstances would have suffered emotional distress and feared for her safety. Thus, we hold that the trial court did not err by denying Defendant's motion to dismiss.

## IV.  Conclusion

For the reasons discussed above, this Court holds that the trial court did not err by denying Defendant's motion to dismiss.


NO ERROR.

Judges HAMPSON and WOOD concur.

Report per Rule 30(e).